United States District Court
Southern District of Texas
**ENTERED**
April 26, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| Aleta Renee Chapman, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Case No. 4:21-cv-03711 |
| v. | § | |
| | § | |
| Newrez, LLC, f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing; U.S. Bank Trust, National Association, solely as owner trustee for RFC 2 Acquisition Trust; Bank of America, N.A., successor in interest to Countrywide Bank, N.A., a division of Treasury Bank, N.A.; Selene Finance, and Unknown Parties in Interest 1-10, | § § § § § § § § § § § § § | |
| *Defendants.* | § § | |

## MEMORANDUM AND RECOMMENDATION

Before the Court is a second motion for summary judgment filed by Defendant Newrez, LLC, f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing's ("Newrez"). Dkt. 56. The Court has considered the motion, Plaintiff Aleta Chapman's response (Dkt. 57), Newrez's reply (Dkt. 59), Chapman's supplemental memorandum (Dkt. 61), her corrections and

addenda to her response (Dkts. 62-64), and her sur-reply (Dkt. 66).[1] After reviewing the record, the numerous briefs, and the applicable law, it is recommended that Newrez's motion for summary judgment be granted.

## Background

This dispute arises from a series of conveyances of a deed of trust. In 2002, Chapman purchased a piece of property at 16118 Chamomile Ct., Houston, TX ("the Property") from Fieldstone Mortgage Company ("Fieldstone"). Dkt. 33 ¶ 14. The beneficiary of the deed of trust was Mortgage Electronic Registration Systems, Inc. ("MERS"). *Id.* ¶ 15. Then, in 2004, Chapman refinanced her property through another loan servicer called Countrywide Home Loans ("Countrywide"). *Id.* ¶ 16; Dkt. 56-1 at 7-20 (DX-A1, deed of trust); *id.* at 26-28 (DX-A2, promissory note). Chapman made payments on the mortgage until 2013, when she fell on hard times and ultimately filed for bankruptcy. Dkt. 33 ¶ 19; Dkt. 56-1 at 113 (DX-A10, payment records); Dkt. 56-1 at 163 (DX-B1, bankruptcy docket).

---

[1] Chapman is cautioned that the Court's rules prohibit filing any memorandum that exceeds twenty pages, or filing a sur-reply, without leave of court. *See* Judge Alfred H. Bennett, Court Procedures and Practices, Rule 5(e)-(f), *available at* https://www.txs.uscourts.gov/sites/txs/files/Judge%20Alfred%20H.%20Bennett%20Proc%20revised%20212023.pdf. Chapman failed to comply with these rules. *See* Dkt. 57 (Chapman's 29-page response with interspersed exhibits); Dkt. 61 (33-page supplemental brief); Dkt. 66 (sur-reply filed without leave). In the interests of efficiency, however, the Court nonetheless has considered the non-compliant filings.

After Chapman had refinanced her home, Countrywide assigned her mortgage to Bank of America. Dkt. 33 ¶ 14. Bank of America subsequently assigned its interests in the Property to another servicer—Green Tree Servicing, LLC ("Green Tree"). *Id.* ¶ 18.

During Chapman's bankruptcy proceedings, she brought an adversary action against Green Tree and Bank of America, alleging that they had no interest in the Property. Dkt. 56-1 at 165 (DX-B1); *see also* Dkt. 43-5 at 2, 6-10. The various mortgage servicers then recorded a series of corrective assignments for the deed of trust. Dkt. 56-1 at 56 (PX-A4, corrective assignment from MERS to Bank of America, retroactively dated to Feb. 17, 2012); *id.* at 30 (corrective assignment from Bank of America to Green Tree, retroactively dated to Nov. 7, 2012).

On June 16, 2015, the bankruptcy court found that, given the set of corrective assignments, Green Tree, as servicer of Fannie Mae, held a valid deed of trust securing a promissory note on the Property, and that Chapman was not entitled to relief. Dkt. 56-1 at 184 (DX-B3, entering judgment for Bank of America and Green Tree). The district court affirmed that ruling. Dkt. 56-1 at 204 (DX-B4).

After the bankruptcy proceeding ended, the Property underwent two more assignments. In 2021, Ditech (formerly Green Tree) assigned the deed of

trust to Newrez, Dkt. 56-1 at 82 (DX-A5), who in 2022 assigned it to U.S. Bank Trust National Association and Selene Finance, *see* Dkt. 56-1 at 155 (DX-A13).

In the interim, Chapman sued Newrez in state court on October 29, 2021, alleging that Newrez failed to send her a notice of trustee sale and thus failed to satisfy a condition precedent to foreclose on the Property. *See* Dkt. 1-2 ¶¶ 12-16, 19. Newrez timely removed to this Court based on diversity jurisdiction. *See* Dkt. 1 ¶¶ 4-6.

After Chapman's counsel withdrew, *see* Dkt. 10, Chapman was granted leave to amend her allegations, which mooted Newrez's and Chapman's pending summary judgment motions. Dkt. 31 at 3 & n.1. Proceeding *pro se*, Chapman filed an amended complaint that added as defendants Bank of America, U.S. Bank Trust National Association, and Selene Finance. Dkt. 33. These newly added defendants moved to dismiss all claims against them. *See* Dkt. 43 (Bank of America's motion); Dkt. 49 (Selene Finance's and U.S. Bank Trust National Association's motion). On March 24, 2023, this Court adopted the undersigned's memorandum and recommendation and granted those motions to dismiss. Dkt. 74 (adopting Dkt. 68).

In the meantime, Newrez filed a second motion for summary judgment, Dkt. 56, which prompted multiple responsive filings from Chapman, Dkt. 57, 61, 63, and a reply from Newrez, Dkt. 59. In addition to responding to the summary judgment motion, Chapman filed a motion demanding further

discovery from Newrez. Dkt. 58; *see also* Dkt. 64 (Chapman's correction and addendum); Dkt. 60 (Newrez's response); Dkt. 65 (Chapman's reply). The undersigned issued an order denying Chapman's requested relief. Dkt. 75. Newrez's summary judgment motion is ripe for resolution.

## Legal Standard

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if the issue that it tends to resolve "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (citing *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)).

When resolving a motion for summary judgment, courts must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal quotation marks omitted). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (quoting *Brown v. City of Hous.*, 337 F.3d 539, 547 (5th

5

Cir. 2003)). When applying these standards, *pro se* filings are liberally construed. *See Jennings v. Towers Watson*, 11 F.4th 335, 341 (5th Cir. 2021).

## Analysis

Chapman advances four claims against Newrez—breach of contract, slander of title, civil conspiracy, and for declaratory judgment. *See* Dkt. 33 at 9-13. There is no dispute that the first three claims are governed by Texas law, whereas binding authority confirms that Chapman's request for declaratory relief is governed by federal law.

Newrez argues that all of these claims fail, including because (1) Newrez did not breach the contract, Chapman has not demonstrated any damages resulting from any asserted breach, and Chapman's default precludes her breach-of-contract claim; (2) the slander of title claim is barred by res judicata and for lack of proof; (3) the failure of Chapman's contract and slander of title claims forecloses her claims for civil conspiracy and declaratory judgment. Dkt. 56 at 5-14. These issues are addressed in turn.

I.  **Chapman has not raised a genuine issue material of fact on her claim that Newrez breached the deed of trust.**

"Under Texas law, the elements of a breach of contract claim are '(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Spot Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d

6

453, 465 (5th Cir. 2003) (internal quotation marks omitted). In this context, Chapman must show that the holder of the security interest—the deed of trust—violated the terms of the mortgage and failed to satisfy preconditions to foreclosing on the property.[2] *See Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 245 & nn. 20-23 (5th Cir. 2018) (citing *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 95-96 (Tex. App.—Eastland 2010, pet. denied)).

Citing uncontroverted evidence, Newrez argues that it satisfied all contractual preconditions to accelerating the deed of trust and initiating foreclosure proceedings. *See* Dkt. 56 at 5-8. The Court agrees.

### A. Newrez provided the notices required by the deed of trust before seeking to foreclose on the Property.

According to Newrez, it properly sent Chapman the notice of trustee sale, as the deed of trust required. Dkt. 56 at 5 (addressing allegations, Dkt. 33 ¶¶ 55-57). The record supports Newrez's position.

Under the deed of trust, the loan servicer must fulfill certain conditions precedent before it can foreclose. Specifically, the loan servicer must provide a notice "prior to acceleration following Borrower's breach" specifying "(a) the

---

[2] Chapman's default does not prohibit her from asserting that Newrez failed to comply with requirements governing notice of foreclosure, as Newrez incorrectly asserts. *See* Dkt. 56 at 8. "If performance of the terms of a deed of trust governing the parties' rights and obligations in the event of default can always be excused by pointing to the debtor's default under the terms of the note, the notice terms have no meaning. Such a reading is inconsistent with the intent of the parties and with Texas law." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 245 (5th Cir. 2018).

7

default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument ...." Dkt. 56-1 at 17 ¶ 22. The foreclosing party also must provide notice of "the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law." Dkt. 56-1 at 18.

Chapman's breach of contract claim premised on these notice requirements fails because Newrez and its predecessor, Ditech, provided the requisite notices. Ditech sent Chapman a notice of default, by certified mail, dated September 16, 2016. Dkt. 56-1 at 101-02 (DX-A9). The notice of default detailed the amount necessary to cure the default ($43,020.38 for missed payments from Sept. 1, 2013 through Sept. 1, 2016); specified the deadline for doing so ("30 days from the date of this notice"); and warned Chapman that "fail[ure] to cure the default within 30 days from the date of this notice" would result in acceleration of the loan.[3] *Id.* at 102.

After being assigned the deed of trust, Dkt. 56-1 at 82 (DX-A5, Feb. 23, 2021 assignment), and after Chapman failed to cure her default, Newrez then

---

[3] Chapman claims that the amount due is disputed. Dkt. 56 at 12, 27. But the Ditch/Newrez notice spells out the amount necessary to cure her default. Chapman's references to higher figures asserted by previous servicers long *before* the September 16, 2016 notice of default was sent are inapposite.

8

notified Chapman, by certified mail, that it was exercising its contractual option to accelerate the loan and schedule a non-judicial foreclosure sale. *See* Dkt. 56-1 at 137-39 (DX-A12, Sept. 10, 2021 notice of acceleration and notice of trustee sale); Dkt. 56-1 at 2 (DX-A, declaration of Cheryl Rathke); *id.* at 215 (DX-C, declaration of Ryan Bourgeois stating that the notice of trustee sale was mailed to Chapman via certified mail). As indicated in Chapman's copy of these documents, the notice specified where and when the trustee sale would occur on November 2, 2021. *See* Dkt. 57 at 24 (Newrez's notice). Chapman submitted no evidence refuting these documents, which show that proper notices were provided.

Instead, Chapman argues that the amount due was not included in Newrez's notice of acceleration. Dkt. 66 at 3. But the deed of trust only requires that the *notice of default*, not the notice of acceleration, provide this information. *Compare* Dkt. 56-1 at 17 (requirements for notice of default), *with id.* at 18 (requirements for notice of acceleration). And here, the notice of default stated the amount due. *See id.* at 101-02 (payoff amount of $43,020.38).

Moreover, as Newrez notes, Chapman proffers no evidence that she suffered any damages resulting from any alleged defects in notice—or any other purported breach by Newrez. Dkt. 56 at 7-8. After all, the foreclosure sale did not occur, and Chapman has not shown that she was harmed by any supposed deficiencies in these notices. *See, e.g., Johnson v. Bank of Am., N.A.*,

9

2014 WL 4923970, at *10 & n.66 (S.D. Tex. Sept. 30, 2014) (rejecting claim for breach of deed of trust for lack of damages). Newrez is entitled to summary judgment on Chapman's breach of contract claim.

### B. Chapman's attempts to raise new theories of liability are futile.

Chapman's briefing, liberally construed, advances two new arguments that were not alleged in her complaint. *See* Dkt. 33. In general, new theories of liability raised for the first time in a response to summary judgment "are not properly before the court." *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). A district court may, however, construe new allegations as a motion to amend the pleadings. *See Fulford v. Lowe's Home Centers, L.L.C.*, 811 F. App'x 240, 243 (5th Cir. 2020) (citing *Hoffman v. L&M Arts*, 838 F.3d 568, 576 (5th Cir. 2016)).

Although leave to amend should be freely given, *see* Fed. R. Civ. P. 15(a), a court can deny leave to amend when it has a "substantial reason" for doing so, *see Dussoy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Valid reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party." *Id.*; *see also Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 373 (5th Cir. 2021). Here, leave to amend should be denied as futile.

> 1. Newrez did not need to hold the note to initiate foreclosure proceedings.

As one of her new theories, Chapman argues that Newrez lacked authority to initiate foreclosure proceedings because there was no notice, on the public record or otherwise, that Newrez held the promissory note. *See* Dkt. 61 at 114-19; Dkt. 61-1 at 17; *see also* Dkt. 57 at 10-12 (arguing that conflicts in the chain of public records bar the mortgage servicer's right to foreclose). As Newrez observes, Dkt. 59 at 2, this contention conflicts with settled law.

In Texas, mortgage agreements typically involve two instruments—a deed of trust and a promissory note. "Under Texas law, a deed of trust is a mortgage with a power to sell on default." *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 622 (N.D. Tex. 2011). "A mortgage created by a deed of trust is an interest created by a written instrument providing security for payment." *Id.* That security is established by the promissory note. *Id.*

Consistent with this structure, Chapman executed both a deed of trust granting the original lender (Countrywide) a security interest in the Property, and a separate promissory note agreeing to pay a specific amount. *See* Dkt. 56-1 at 7-24 (DX-A1). The promissory note specifies the sums due, the deadlines for payment, and the interest rate. *Id.* at 26-28 (DX-A2).

Importantly, Texas law does not require a single party to own both the underlying note and the related deed of trust. *See Martins v. BAC Home Loans*

11

*Servicing, L.P.*, 722 F.3d 249, 254-55 (5th Cir. 2013) (citing Tex. Prop. Code Ann. § 51.0025). This principle is reflected in Chapman's promissory note and deed of trust. Both documents caution that the note could be transferred, even without notice to Chapman. *See* Dkt. 56-1 at 26 (DX-A2, promissory note; "I understand that the Lender may transfer this Note."); Dkt. 61 at 6 (PX-N); Dkt. 56-1 at 16 ¶ 20 (DX-A1, deed of trust; "The Note or a partial interest in the Note (together with this Security Interest) can be sold one or more times without prior notice to Borrower."). And the deed of trust advises that the owner of the note may differ from the "Loan Servicer," Dkt. 56-1 at 16 ¶ 20, that is, the entity authorized to receive loan payments, to send those payments to the mortgagee, and to foreclose on the Property. *See Hall v. BAC Home Loans Servicing, L.P.*, 541 F. App'x 430 (5th Cir. 2013) (citing definition of "mortgage servicer" under Tex. Prop. Code Ann. § 51.0001(3) and servicer's authority to foreclose under § 51.0025).

Newrez therefore had no obligation to notify Chapman that the promissory note had been assigned.[4] As the note and deed of trust reflect, "no

---

[4] Relatedly, Chapman appears to complain that the assignment of the deed of trust from GreenTree/Ditech to Newrez was not recorded. *See, e.g.*, Dkt. 61-1 at 17-18. Texas law, however, does not require a mortgage servicer to record the deed of trust assignment before exercising its authority to foreclose. *See Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 625 (S.D. Tex. 2010) (wrongful foreclosure claim cannot be based on failure to record the assignment of the deed of trust) (citing *JWD, Inc. v. Fed. Ins. Co.*, 806 S.W.2d 327, 329-30 (Tex. App.—Austin 1991, no pet.)); *see also, e.g., Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 755 (N.D. Tex. 2013) ("Texas courts have consistently held that recordation is not necessary for liens, deeds, or

such notice is required." *See Caldera v. Bank of N.Y. Mellon*, 2017 WL 972154, at \*2 (N.D. Tex. Mar. 10, 2017) (citing analogous language in promissory note). Moreover, a mortgage servicer like Newrez need not own or hold the note to enforce the deed of trust and initiate a foreclosure sale. *See Hu v. Stewart*, 2021 WL 308975, at \*4 (S.D. Tex. Jan. 29, 2021); *see also Morlock, L.L.C. v. Nationstar Mortg., L.L.C.*, 447 S.W.3d 42, 47-48 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (whether mortgage servicer held the note was "irrelevant with respect to [servicer's] right to enforce the Deed of Trust through non-judicial foreclosure"). Because Newrez was assigned the deed of trust, Dkt. 56-1 at 82 (DX-A5), it had the authority to foreclose. Chapman's latest challenge to that authority is barred as futile.

2. <u>Newrez provided notice that it was the loan servicer.</u>

As another new theory, Chapman asserts that Newrez breached the deed of trust by failing to notify her of its status as loan servicer. Dkt. 61 at 53-54. Uncontroverted evidence refutes her contention.

The deed of trust entitles to Chapman to written notice "[i]f there is a change of the Loan Servicer" that "will state the name and address of the New Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of

---

deeds of trust to be enforceable against the parties to those instruments") (internal quotation marks omitted). The lack of recordation is therefore irrelevant.

13

servicing." Dkt. 56-1 at 17. Ditech provided this notice on October 17, 2019, advising Chapman that "[t]he servicing of your mortgage account is being transferred" to Shellpoint, *i.e.*, Newrez. *See* Dkt. 56-1 at 87-88 (DX-A7, notice of transfer of mortgage servicer). Newrez also notified Chapman that "servicing of your mortgage is being transferred" from Ditech to Newrez, effective Nov. 10, 2019. Dkt. 56-1 at 90 (DX-A8, Newrez letter). Chapman provides no contrary evidence. Thus, her new lack-of-notice theory is futile.[5]

## II. <u>Chapman has not raised a genuine dispute as to a specific loss concerning her slander of title claim.</u>

In her amended complaint, Chapman alleges that Newrez made "false statements in disparagement of [her] title to the subject property." Dkt. 33 ¶ 65. She asserts that Newrez (and its predecessors) "prepared and filed multiple contradictory assignments and other encumbrance documents against the" Property, that various servicers claimed an interest in the Property, and that they "initiated foreclosure proceedings ..., only to dismiss the claims." *Id.* ¶¶ 61-63.

To prevail on a claim for slander of title, a plaintiff must demonstrate "(1) the utterings and publishing of disparaging words; (2) that they were false; (3) that they were malicious; (4) that special damages were sustained thereby;

---

[5] To the extent that Chapman claims that previous conflicts in the chain of title nullify Newrez's authority to foreclose, *see, e.g.*, Dkt. 61 at 60, 88-62, Newrez correctly argues that this theory is barred by res judicata, Dkt. 56 at 9. *See infra*, Part II.

(5) that the plaintiff possessed an estate or interest in the property disparaged; and (6) the loss of a specific sale." *Emeribe v. Wells Fargo Bank, N.A.*, 2013 WL 140617, at *3 (S.D. Tex. Jan. 10, 2013) (citing *Williams v. Jennings*, 755 S.W.2d 874, 879 (Tex. App.—Houston [14th Dist.] 1988, writ ref'd)). Moving for summary judgment, Newrez asserts that Chapman fails to show either that Newrez made false statements disparaging her title, or that she lost any sale as a result. Dkt. 56 at 8-11.

First, the Court agrees with Newrez that Chapman's slander-of-title claim improperly attempts to challenge the validity of prior assignments that was already resolved in her prior suit against GreenTree and Bank of America. *See* Dkt. 56 at 9. "Under res judicata," also known as claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Warren v. Mortgage Elec. Registration Sys., Inc.*, 616 F. App'x 735, 737 (5th Cir. 2015) (quoting *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009)). "The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004).

15

The elements of res judicata are met. Newrez is a party in privity with Green Tree, as evidenced by GreenTree's assignment of the deed of trust to Newrez, Dkt. 56-1 at 82 (DX-A5). *See Warren*, 616 F. App'x at 737 (reaching analogous conclusion that Bank of America, the assignee of the deed of trust, and MERS, the original beneficiary of the deed of trust, were in privity for res judicata purposes); *Crear v. JPMorgan Chase Bank, N.A.*, 491 F. Supp. 3d 207, 215 (N.D. Tex. 2020) (noting that "federal courts have deemed non-parties succeeding a party's interest in property ... to be in privity with the original parties"; concluding that privity requirement was met). The bankruptcy court also had jurisdiction to resolve Chapman's challenge to the validity of the assignments, *see* 28 U.S.C. § 157(b)(2)(K), which resulted in a final judgment on the merits, *see* Dkt. 56-1 at 184, DX B-3 (bankruptcy court's judgment); Dkt. 56-1 at 204-05 (district court's final judgment); *see also In Matter of Galaz*, 841 F.3d 316, 325 (5th Cir. 2016) ("[A] bankruptcy order is entitled to the effect of *res judicata* ....") (internal quotation marks omitted).

For the last element, the Fifth Circuit uses the "transactional test" to determine whether the moving party asserted the same claim or cause of action in both actions. *See In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007) (quoting *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992)). "The critical issue [in] this determination is whether the two actions under consideration are based on the same nucleus of operative facts ... rather than

the type of relief requested, substantive theories advanced, or types of rights asserted." *In re Paige*, 610 F.3d 865, 872 (5th Cir. 2010) (internal quotation marks omitted). Chapman already attempted to challenge breaks in the chain of title. *See* Dkt. 56-1 at 180 (DX-B2, Chapman's complaint in adversary action). But the bankruptcy court rejected her challenge, concluding that "Greentree Servicing LLC as Servicer for Fannie Mae, Its Successors and/or Assigns, holds a valid deed of trust securing a promissory note dated November 10, 2004 in the amount of $126,200.00." *Id.* at 184 (DX-B3). Chapman cannot relitigate the validity of those assignments now.

Second, Newrez argues that Chapman cannot satisfy the last element for a slander of title claim—the loss of specific sale. Dkt. 56 at 10-11. To satisfy this element, a plaintiff must allege that "a pending transaction was defeated by the slander." *K&N Builder Sales, Inc. v. Baldwin*, 2013 WL 1279292, at *7 (Tex. App.—Houston [14th Dist.] Mar. 28, 2013, pet. denied) (citing *A.H. Belo Corp. v. Sanders*, 632 S.W.2d 145, 146 (Tex. 1982)). Yet there is no indication that Chapman lost a specific sale because of Newrez's actions. *See, e.g.*, *Halliburton Co. v. Can-Tex Energy Corp.*, 2001 WL 737542, at *3 (Tex. App.—Dallas July 2, 2001, pet. denied) (holding evidence was insufficient when the purchaser did not "refuse[] to buy" the property because of the allegedly slanderous lien); *see also, e.g., Stidham v. Ocwen Loan Servicing, L.L.C.*, 813 F. App'x 923, 927 (5th Cir. 2020) (affirming summary judgment where plaintiff

17

claimed she spoke to "a specific buyer" but could not identify the buyer and a price was not discussed); *Davis v. Countrywide Home Loans, Inc.*, 1 F. Supp. 3d 638, 646 (S.D. Tex. 2014) (granting summary judgment for failure to demonstrate loss of a specific sale). These deficiencies merit summary judgment for Newrez on Chapman's slander of title claim.

### III. Chapman has no cognizable cause of action to support her declaratory judgment and civil conspiracy claims.

The recommended disposition of Chapman's slander of title and breach of contract claims eliminates any basis for her remaining claims. Claims of civil conspiracy and for declaratory judgment are derivative; they depend on some other cause of action.[6] *See Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) (civil conspiracy under Texas law is a derivative tort); *Reyes v. N. Texas Tollway Auth.*, 861 F.3d 558, 565 n.9 (5th Cir. 2017) (requests for declaratory relief "must be supported by some underlying cause of action").

Because Newrez is entitled to summary judgment motion on Chapman's breach of contract and slander of title claims, there are no claims left to which her declaratory judgment action or her civil conspiracy claim can attach.[7] *See*

---

[6] Federal, rather than Texas law, governs Chapman's request for declaratory relief. *See Sheriff v. LoanCare, LLC*, 2018 WL 3756949, at *3 (S.D. Tex. Aug. 8, 2018) ("When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.") (internal quotation marks omitted).

[7] The Court also agrees with Newrez that Chapman's request for a declaration regarding Newrez's authority to foreclose is moot. *See* Dkt. 56 at 13-14. As noted

*Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 630 (S.D. Tex. 2011) ("Because [defendant] is entitled to summary judgment on all other tort claims, he is entitled to summary judgment on the civil conspiracy claim."); *see also Eason v. Ocwen Loan Servicing, LLC*, 2020 WL 7080449, at *5 (S.D. Tex. Dec. 3, 2020) (granting summary judgment on declaratory judgment action where all other underlying claims failed). Chapman's civil conspiracy and declaratory judgment claims therefore fail as a matter of law.

### IV. Newrez's further request for entry of a separate final judgment is moot.

In its summary judgment motion, Newrez included a separate request for entry of a separate final judgment under Rule 54(b). Dkt. 56 at 14-16. That rule authorizes a court to resolve part of a case by entering a judgment on certain claims or certain parties, if there is "no just reason for delay." Fed. R. Civ. P. 54(b). After Newrez's motion was filed, however, Chapman's claims against all other defendants were dismissed. Dkt. 74. The only remaining claims are those against Newrez. Thus, if the Court agrees that Newrez is entitled to summary judgment, the Court would enter a final judgment as to *all claims and all parties* under Rule 58(a). *See* Fed. R. Civ. P. 58(a). It is

---

above, no foreclosure sale occurred. And since that time, Newrez assigned its interest to Selene Finance. *See* Dkt. 56-1 at 155-57 (notice of transfer). "There is no longer a justiciable controversy between the parties" that can support declaratory relief. *Wilburn v. Wells Fargo Bank Nat'l Ass'n*, 2013 WL 12100735, at *4 (N.D. Tex. June 25, 2013).

19

therefore recommended that Newrez's request for a Rule 54(b) judgment be denied as moot.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Defendant Newrez's second motion for summary judgment (Dkt. 56) and enter a separate final judgment pursuant to Federal Rule of Civil Procedure 58(a) that Plaintiff Aleta Chapman take nothing on her claims.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.**  ***Ortiz v. City of San Antonio Fire Dep't***, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on April 26, 2023, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge